UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER MARIE RICE,

                                                                                             DECISION AND ORDER

                              Plaintiff,

                                                                                            19-CV-1558L

                      v.

ANDREW SAUL,
Commissioner of Social Security,

                              Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On April 7, 2016, plaintiff, then thirty-six years old, filed applications for a period of disability and disability insurance benefits, and for Supplemental Security Income, alleging an inability to work since January 30, 2016. (Administrative Transcript, Dkt. #6 at 15). Her application was initially denied. Plaintiff requested a hearing, which was held on September 7, 2018 before Administrative Law Judge ("ALJ") Paul Georger. The ALJ issued an unfavorable decision on November 30, 2018. That decision became the final decision of the Commissioner when the Appeals Council denied review on September 20, 2019. (Dkt. #6 at 1-3). Plaintiff now appeals.

       The plaintiff has moved for remand of the matter for further proceedings (Dkt. #8), and the Commissioner has cross moved (Dkt. #10) for judgment on the pleadings pursuant to Fed. R. Civ.

Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, mainly comprised of treatment records for migraine headaches, degenerative disc disease of the cervical spine, obesity, depressive disorder, post-traumatic stress disorder ("PTSD"), and anxiety, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 17).

Applying the special technique, the ALJ found that plaintiff had "moderate" limitations in understanding, remembering, and applying information, "moderate" limitations in interacting with others, "moderate" limitations in attention and concentration, and "marked" limitations in adapting or managing herself. (Dkt. #6 at 19).

The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, with the following limitations: can no more than occasionally climb ramps or stairs; can never climb ladders, ropes or scaffolds; and can no more than occasionally balance, stoop, kneel, crouch and/or crawl. Plaintiff is further limited to simple, routine and repetitive tasks, but not at a production rate pace (e.g., assembly line work). She can make only simple work-related decisions,

and can have no more than occasional interaction with coworkers, supervisors and the public. (Dkt. #6 at 20).

When given this RFC as a hypothetical question at the hearing, vocational expert Josiah L. Pearson testified that such an individual would be unable to perform plaintiff's past relevant work as a department store manager, but could instead perform the representative light, unskilled positions of mail clerk, routing clerk, and photocopy machine operator. (Dkt. #6 at 26). The ALJ accordingly found plaintiff "not disabled."

## I.     Opinions By "Other" Treating Sources

Plaintiff's primary contention is that the ALJ erred when he declined to grant more than "partial" weight to the opinion of plaintiff's treating therapist, licensed clinical social worker Rachel Schladebeck. (Dkt. #6 at 23, 788-93).

As an initial matter, although Ms. Schladebeck provided treatment to plaintiff, by virtue of her status as a social worker, her opinion is not entitled to controlling weight. *See Meyers v. Commissioner*, 2020 U.S. Dist. LEXIS 32843 at *13 (W.D.N.Y. 2020); *Coleman v. Commissioner*, 335 F. Supp. 3d 389, 398 (W.D.N.Y. 2018). Social workers are not "acceptable medical sources" for purposes of the applicable Social Security Regulations, but rather are "other medical sources," whose opinions may be considered as to the severity of a plaintiff's impairment and ability to work, but whose conclusions are not entitled to any special weight. 20 C.F.R. § 416.902. *See May v. Colvin*, 2014 U.S. Dist. LEXIS 94368 at *17 (W.D.N.Y. 2014) (noting that "[t]he ALJ has discretion to determine appropriate weight to accord opinions of other medical sources," and finding that the ALJ's rejection of a social worker's opinion on the grounds that it reflected a short course of treatment and was inconsistent with other evidence of record, including the opinion of a consultative examiner, was appropriate).

Nonetheless, where, as here, the record does not contain medical opinions from an acceptable medical source such as a treating physician or psychiatrist concerning a severe impairment, the opinions of consulting and examining physicians, as well as non-acceptable medical sources such as therapists, can "take on particular significance." *Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. 2018). In considering such opinions, the ALJ should apply the same factors typically used to weigh the opinions of treating physicians, including: (1) the length, nature and extent of the treatment relationship; (2) the frequency of examination; (3) the evidence presented to support the source's opinion; (4) whether the opinion is consistent with the record as whole; and (5) whether the opinion is offered by a specialist. Further, the ALJ must articulate his reasons for assigning the weight that he does accord to the medical opinions of record. *Id*.

Ms. Schladebeck rendered her opinion on August 8, 2018, based on regular treatment sessions beginning March 22, 2016. She noted that plaintiff has significant mental health problems, including anxiety, PSD, bipolar disorder and obsessive-compulsive disorder. She opined that despite prescription mood stabilizers, plaintiff still struggled with periods of deep depression and anxiety. Symptoms included loss of interest, suicidal thoughts, decreased energy, unstable relationships, intrusive memories of trauma, mood disturbance, emotional isolation, and episodic bipolar periods.

Ms. Schladebeck was asked to rate plaintiff's ability to perform in 16 areas of mental functioning related to unskilled work, such as carrying out short and simple instructions, maintaining a routine, dealing with normal work stress, and getting along with others, and rated plaintiff as "unable to meet competitive standards" or "no useful ability to function" in every one of the 16 categories. (Dkt. #6 at 788-93). Ms. Schladebeck explained the basis for these extreme

limitations as, "[d]ue to sig[nificant]/severe depression [symptoms] . . . [plaintiff] will not make it to work then – mental health would be a major barrier [sic] anxiety." (Dkt. #6 at 790). Later, Ms. Schladebeck opined that plaintiff's symptoms would cause her to be absent from work more than four days per month, stating that plaintiff "would be missing weeks on end [because] she goes through major bouts of depression where she [i]s not responsive and suicidal." (Dkt. #6 at 792).

  The ALJ acknowledged Ms. Schladebeck's status as a treating social worker, but afforded her opinion only "partial" weight, noting that "[a]lthough [Ms. Schladebeck's] findings are consistent with the mental health record, the limitations exceed those supported by the record." (Dkt. #6 at 24). The evidence of record, as described by the ALJ earlier in the opinion, included the opinions of consulting psychologist Dr. Janine Ippolito and state agency medical consultant Dr. A. Dipeolu, treatment records concerning plaintiff's February 17-18, 2016 hospitalization for suicidal ideation, records of plaintiff's treatment for anxiety and depression with prescription medication, and treatment records from Horizon Mental Health (where plaintiff treated with Ms. Schladebeck). (Dkt. #6 at 19, 21-23).

  I find that the ALJ's decision to give Ms. Schladebeck's opinion only "partial" weight, due to its inconsistency with the rest of the record, was not improper.

  Initially, none of the other medical opinions of record, and none of plaintiff's mental health treatment records, suggest limitations as dramatic, long-lasting or debilitating as those described by Ms. Schladebeck, or indicate that plaintiff was incapacitated for "weeks on end," or was ever considered to be a suicide risk after the February 2016 episode. At her intake examination on March 22, 2016 with Horizon Mental Health, plaintiff rated her depression as 5-6 out of 10, and her anxiety as 4-5 out of 10, and denied suicidal ideation. (Dkt. #6 at 306, 320). She reported that she had taken a leave of absence from her job in January 2016 due to migraines and inability to

focus. (Dkt. #6 at 314). On May 4, 2016 at a therapy session with Ms. Schladebeck, plaintiff rated her anxiety as 5-6 out of 10, and reported that she suffered from panic attacks about once per week which lasted for 10-30 minutes, and engaged in obsessive rituals and counting, but had no social anxiety. (Dkt. #6 at 333). A June 1, 2016 psychiatric exam included objective observations of adequate grooming, appropriate behavior, and anxious mood and flat affect, but with clear thinking, logical thought processes, fair judgment, normal orientation, intact memory (but poor concentration), and fair insight. (Dkt. #6 at 340). The same day, plaintiff rated her depression as 5/10 and her anxiety as 7/10, and reported panic attacks 5 times in the previous month. She again denied suicidal ideation. (Dkt. #6 at 341-44). Plaintiff's "lethality" (suicide) risk was consistently assessed by Ms. Schladebeck as "none."

Plaintiff underwent a psychiatric evaluation on July 8, 2016 with consulting psychologist Dr. Ippolito. Dr. Ippolito noted plaintiff's descriptions of panic attacks and depression, although on examination plaintiff was noted to be cooperative, with adequate social skills, appropriate hygiene, coherent and goal-directed thought, dysphoric (agitated) affect, dysthymic (depressed) mood, intact attention and concentration, mildly impaired memory skills, average cognitive functioning, good insight, and good judgment. Dr. Ippolito found that plaintiff had no limitations in her mental functioning, other than a "moderate to marked" limitation in dealing with stress, due to emotional distress and fatigue. (Dkt. #6 at 381-85). (The ALJ gave Dr. Ippolito's opinion "partial" weight, finding that the record supported additional RFC limitations, in order to account for plaintiff's PTSD.)

Plaintiff's activities of daily living also belie Ms. Schladebeck's opinion that plaintiff has no appreciable ability to regularly get along with others, make simple decisions, maintain a routine, or get to work "for weeks on end." Plaintiff told Dr. Ippolito that although she sometimes requires

6

assistance with household tasks due to migraines, depression and anxiety, she regularly drives, manages her own money, interacts with family and friends, cares for her children, cooks, cleans, does laundry, shops, and showers and dresses independently. (Dkt. #6 at 19, 383-84).

In light of the anomalous nature of Ms. Schladebeck's assessment, and its inconsistency with the other medical opinion evidence of record, plaintiff's treatment notes, and plaintiff's self-reported activities of daily living, the ALJ's finding that the assessment was entitled only to "partial" weight was supported by substantial evidence of record, and was not factually erroneous.

### II.     The ALJ's Rejection of Medical Opinions of Record

Plaintiff also argues that the ALJ's decision to discount all of the opinions of record concerning plaintiff's mental and physical abilities deprives his opinion of substantial supporting evidence, and requires remand. Specifically, the ALJ gave "little" weight to the opinion of consulting physician Dr. Hongbiao Liu. Dr. Liu examined plaintiff and administered objective tests of range of motion, strength, and fine motor activity, and ultimately assessed plaintiff as having "no" physical limitations. The ALJ declined to adopt Dr. Liu's opinion, finding that the record established that plaintiff's disc herniations did cause exertional limitations which impacted her RFC. (Dkt. #6 at 24, 376-79).

With respect to the opinions concerning plaintiff's mental health, in addition to giving only "partial" weight to the opinions of Dr. Ippolito and Ms. Schladebeck, as discussed above, the ALJ gave "little" weight to the opinion of reviewing (non-examining) state agency physician Dr. A. Dipeolu. Specifically, the ALJ found that the claimant's active mental health treatment history contradicted Dr. Dipeolu's opinion that plaintiff's mental health conditions were "nonsevere." (Dkt. #6 at 24, 71).

An "RFC finding is not defective merely because it 'does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision.'" *Gore v. Commissioner*, 2020 U.S. Dist. LEXIS 54878 at *17 (W.D.N.Y. 2020) (quoting *Trepanier v. Commissioner*, 752 F. App'x 75, 79 (2d Cir. 2018)(unpublished opinion)). While the ALJ did not adopt any of the medical opinions in their entirety, his reasoning for adopting or rejecting portions of each was clear. He did not rely on his own lay interpretation of the medical record in formulating plaintiff's RFC, but relied on the record as a whole, incorporating RFC limitations which in all but one case (the opinion of Ms. Schladebeck, discussed above) *exceeded* the limitations suggested by the medical opinions of record. Moreover, the limitations found by the ALJ bore an obvious and common-sense relationship to the plaintiff's severe impairments, (e.g., postural limitations to account for degenerative disc disease of the cervical spine, and social interaction, production pace and skill-level limitations to account for anxiety), and were not contradicted by any objective examination findings of record. Accordingly, the Court concludes that the ALJ did not improperly substitute his own lay judgment for a competent medical opinion. *See Wynn v. Commissioner*, 342 F. Supp. 3d 340, 349 (W.D.N.Y. 2018) (ALJ's failure to adopt any medical opinion its entirety is not erroneous where "it is clear to the Court how and why the ALJ arrived at the assessed RFC").

In summary, I find that the weight given by the ALJ to the medical opinions of record was appropriate and sufficiently explained, and that the ALJ's decision is supported by substantial evidence, and is not the product of legal or factual error.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #8) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #10) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 13, 2020